UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN S.,[1]         )<br>              )<br>      *Plaintiff,*   )<br>              )<br>      *v.*         )    No. 1:23-cv-468-MG-RLY<br>              )<br>MARTIN O'MALLEY,[2] Commissioner of the Social  )<br>Security Administration,      )<br>              )<br>      *Defendant.*   ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In August 2021, Plaintiff Kevin S. applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of July 2, 2021. [Filing No. 10-3 at 3.] His application was initially denied on December 2, 2021, [Filing No. 10-3 at 2-17], and upon reconsideration on February 8, 2022, [Filing No. 10-4 at 18-31]. Administrative Law Judge Kevin Walker (the "ALJ") conducted a telephonic hearing on July 11, 2022. [Filing No. 10-2 at 40-80.] The ALJ issued a decision on August 9, 2022, concluding that Kevin S. was not entitled to receive benefits. [Filing No. 10-2 at 21-34.] The Appeals Council denied review on February 8, 2023. [Filing No. 10-2 at

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2-5.] On March 15, 2023, Kevin S. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 7.] For the following reasons, the Court **AFFIRMS** the decision of the ALJ denying Kevin S. benefits.

## I.
## STANDARD OF REVIEW[3]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers*

---

[3] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

*v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform His past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform His own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id*. (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Kevin S. was 48 years old on July 2, 2021—the date of his alleged onset of disability. [Filing No. 10-3 at 3.] Kevin S. has completed high school through the 12th grade and has past work experience as a custodian and technician. [Filing No. 10-3 at 8.] Kevin S.'s applications allege that he can no longer work because he has depression, panic disorder, diabetes, and anxiety disorder. [Filing No. 10-3 at 3.] Following the July 2022 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Kevin S. was not disabled. [Filing No. 10-2 at 21-34.] Specifically, the ALJ found as follows:

- At Step One, Kevin S. has not engaged in substantial gainful activity[4] since July 2, 2021 (the application date). [Filing No. 10-2 at 23.]

- At Step Two, Kevin S. "has the following severe impairments anxiety, bipolar disorder, and obesity." [Filing No. 10-2 at 26.]

- At Step Three, Kevin S. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

No. 10-2 at 27.] As to the "paragraph B" criteria for Listings 12.04 and 12.08, the ALJ found that Kevin S. had "moderate" limitations in two areas: (1) interacting with others, (2) concentrating, persisting, or maintaining pace ("CPP"); and "mild" limitations in two areas: (1) understanding, remembering, or applying information and (2) adapting or managing oneself. [Filing No. 10-2 at 27-28.]

- After Step Three but before Step Four, Kevin S. had the RFC "to perform full range of work at all exertional levels but with the following nonexertional limitations: he has the ability, on a sustained basis, to understand, carry out, and remember simple instructions. He is able to make judgements commensurate with functions of simple, repetitive tasks. He can deal with occasional changes at work. He can manage occasional contact with the public, but sustained, intensive, interpersonal contact is precluded. He would work best alone, in semi-isolation from others, or as part of a small group. He can have at least occasional interaction with supervisors, coworkers, and the public. He cannot work at production rate pace or meet strict quota production requirements but can meet all end-of-day goals." [Filing No. 10-2 at 29.]

- At Step Four, the ALJ found Kevin S. is unable to perform any past relevant work as a custodian or technician. [Filing No. 10-2 at 32.]

- At Step Five, the ALJ found that considering Kevin S.'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including sorter, packer, and machine feeder. [Filing No. 10-2 at 33-34.]

### III.
### DISCUSSION

Kevin S. argues that the ALJ failed at Step Four in two aspects: (1) by determining he had the mental RFC to manage occasional interaction with supervisors, coworkers, and the public despite Dr. Robert Kurzhals' consultative opinion; and (2) by determining he had the mental RFC to tolerate work stress so long as the jobs do not require working at a production rate pace or meeting strict quota production requirements, despite Nurse Andrea Tennancour's treating source opinion. [Filing No. 14 at 3.]

The RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). *See* 20 C.F.R. § 404.1545(a)(1). "The RFC assessment must ... identify the individual's functional limitations or

restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, Fed. Reg. 34474-01 (July 2, 1996). The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske v. Saul*, 955 F.3d 583, 595-96 (7th Cir. 2020). "The ALJ is not required to address every piece of evidence or testimony presented but must provide a 'logical bridge' between the evidence and the conclusions so that [the Court] can assess the validity of the agency's ultimate findings." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

      Here, the ALJ determined Kevin S. had the RFC to perform a full range of work at all exertional levels with various mental limitations, including on a sustained basis, to understand, carry out, and remember simple instructions; make judgements commensurate with functions of simple, repetitive tasks; deal with occasional changes at work; manage occasional contact with the public, but sustained, intensive, interpersonal contact is precluded; work best alone, in semi-isolation from others, or as part of a small group; have at least occasional interaction with supervisors, coworkers, and the public; and no work at production rate [Filing No. 10-2 at 29.]

      The Court notes that the mental RFC is part of the overall RFC assessment after Step Three, but before Step Four, and is the focus of Kevin S.'s arguments. Further, Kevin S. takes issue with the ALJ's evaluation of opinion evidence in connection only with the limitations of interacting with others and work-place stress, and the undersigned shall limit its opinion as such. Further, the Court reiterates that "we examine the [ALJ's] opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions. *See Orlando v. Hecklower*, 776 F.2d 209, 213 (7th Cir. 1985).

      Because Kevin S. filed his application after March 2017, 20 C.F.R. § 416.920c governs his claim. Under this framework, ALJs evaluate all medical opinions using the following factors:

supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c. The opinion of a claimant's treating physician no longer receives controlling weight. 20 C.F.R. § 416.920c(a). "Instead, the most important factors are a medical opinion's supportability and consistency with the evidence in the record." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (internal quotation marks omitted). These are the factors that the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 416.920c(b).

For an opinion to be "supportable," it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 416.920c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Similarly, for an opinion to be "consistent," it must be, reductively, consistent with the record. 20 C.F.R. § 416.920c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### A. Interacting with Others and Dr. Kuzhals' Opinion

First, Kevin S. argues that the ALJ erred in not discussing how the factors of supportability and consistency led him to find the opinion of Dr. Kurzhals—assessing Kevin S. with a moderately to markedly impairment in relating to coworkers, supervisors, and the public—was less than fully persuasive, other than referencing the exam was a one-time exam. [Filing No. 14 at 13-14.] He argues that the ALJ superficially addressed consistency when stating Dr. Kurzhals' opinion was

inconsistent with other mental status exams but then did not explain what he meant by deeming the other exams as "fairly normal." [Filing No. 14 at 14.] Lastly, he argues that this is not harmless error, because the VE testified that competitive employment was precluded for an individual who was precluded from work with the public, could not tolerate direct contact with coworkers, and could only tolerate occasional brief and superficial contact with supervisors. [Filing No. 14 at 15.] He argues that Dr. Kurzhals' assessment of moderate to marked limitations in these areas would therefore eliminate all jobs. [Filing No. 14 at 15.]

On November 30, 2021, Dr. Kurzhals completed a consultative psychological assessment. [Filing No. 10-7 at 267-272.] In the Step Two analysis, and in connection with the functional area of interacting with others, the ALJ observed Dr. Kurzhals' estimate of Kevin S.'s ability to relate to coworkers, supervisors, and the public was moderately to markedly impaired due to depression, mood instability, and anxiety. [Filing No. 10-2 at 28 (citing Filing No. 10-7 at 272).] Regarding supportability and consistency of Dr. Kurzhals' opinion, the ALJ found that his opinion was somewhat persuasive, and consistent with the exam itself, but noted that it was based on one meeting without opportunity to examine his medical history and was inconsistent with other mental status exams that were fairly normal when he took medication as prescribed. [Filing No. 10-2 at 32.]

The ALJ properly found Dr. Kurzhals did not have the opportunity to examine Kevin S.'s entire medical history and was basing his opinion on a single examination, which was inconsistent with other exams due to medication interruption at the time of examination. [Filing No. 10-2 at 32.] The regulations allow the ALJ to assess the frequency of examinations, and, here, the ALJ

reasonably contextualized Dr. Kurzhals' opinion given Plaintiff's larger medical history. 20 C.F.R. § 404.1520c(c)(3)(ii), 416.920c(c)(3)(ii).

The ALJ also appropriately noted Dr. Kurzhals' opinion was consistent with the exam he conducted, but discounted the opinion because it was not supported by the longitudinal examination history. [Filing No. 16 at 14.] The ALJ pointedly acknowledged Kevin S.'s alleged troubles relating to coworkers and supervisors, his issues with depression, bipolar disorder, and anxiety, and that he was not taking his medication at the time of the consultative examination with Dr. Kuzhals. [Filing No. 10-2 at 28, 30, 32.] The ALJ also reviewed Kevin S.'s personal statements that he got along ok with authority figures and had never been fired or laid off for these issues. [Filing No. 10-2 at 28.] Exam findings from July 2021 and early 2022 were then summarized, noting Kevin S. exhibited a full range of affect, denied depression, had a cooperative attitude, had good eye contact, and medication improved his behavior. [Filing No. 10-2 at 28.] The ALJ contrasted these observations with the fact that Nurse Tennancour encouraged Kevin S. to continue taking medication, that he reported symptom improvement once he restarted medication, and Dr. Kuzhals' findings were inconsistent with other mental status exams after he took medication as prescribed. [Filing No. 10-2 at 32.] The ALJ then found the findings of reviewing psychologists Drs. Unversaw and Clark to be persuasive as they reviewed Kevin S.'s medical history and found he had only a moderate limitation in interacting with others. [Filing No. 10-2 at 32.]

The ALJ appropriately explained the bridge between finding the Dr. Kuzhals' opinions somewhat persuasive, and ultimately finding Kevin S. had only a moderate limitation in interacting with others. Further, the ALJ did not simply limit Kevin S. to occasional interaction with supervisors, coworkers, and the public to account for his moderate limitation in this functional area. The ALJ also determined he could manage occasional contact with the public, but sustained,

intensive, interpersonal contact was precluded, and he would work best alone, in semi-isolation from others, or as part of a small group. These limitations appropriately balance the observations of the ALJ between the examination findings, record evidence, and medical opinions. Therefore, the Court does not find remand appropriate on this issue.

### B. Work-place Stress and Nurse Tennancour's Opinion

Second, Kevin S. argues that the ALJ erred in not discussing how the factors of supportability and consistency led him to find the opinion of Nurse Tennancour unpersuasive. [Filing No. 14 at 18.] He argues the ALJ inaccurately found that Nurse Tennancour's extreme limitation on his ability to perform under stress or carry out tasks where speed and sustained attention are critical was inconsistent with the treatment record. [Filing No. 14 at 17-18.] He argues the ALJ's RFC (cannot work at production rate pace or meet strict quota production requirements, but otherwise meet end-of-day goals) does not accommodate these restrictions. [Filing No. 14 at 18.] Kevin S. argues the ALJ's rationale for declining to adopt work-stress limitations does not satisfy the regulations. [Filing No. 14 at 18.] Further, Kevin S. contends that the ALJ did not explain how his symptoms were alleviated when Nurse Tennancour documented continued symptoms despite compliance with treatments, including a continued sleep disturbance. [Filing No. 14 at 14, 18.] Lastly, he argues that this is not harmless error, because the assessment of marked limitations in his ability to adapt and manage himself assessed by Nurse Tennancour would eliminate all jobs. [Filing No. 14 at 19-20.]

Nurse Tennancour completed a mental status statement in March 2022, assessing a severe restriction in Kevin S.'s ability to perform under stress or carry out tasks in which speed and sustained attention are critical. [Filing No. 10-7 at 296.] Nurse Tennancour completed a second mental status statement in June 2022, reporting that Kevin S. had resumed medications and were

working to find stabilization, and again assessed extreme limitations in performing under stress or carrying out tasks in which speed and sustained attention are critical. [Filing No. 10-7 at 324.]

Regarding Nurse Tennancour's March 2022 opinion, the ALJ appropriately found her opinion unpersuasive and lacks support. [Filing No. 10-2 at 30, 32.] Nurse Tennancour's exams described Kevin S.'s concentration and attention to be in normal range, but in her mental status statements determined these areas would be constantly affected by his condition, and further identified drowsiness and dizziness as medication side effects. [Filing No. 10-2 at 30.] The ALJ noted that this examination occurred after just one visit and at a time when he was not taking all his medications. [Filing No. 10-2 at 32.] For similar issues, the ALJ found Nurse Tennancour's June 2022 opinion inconsistent, as it still assessed marked limitations in engaging in stressful situations or interpersonal relationships but was not in line with recent treatment notes where Kevin S. reported feeling more stable with medication and being better around people. [Filing No. 10-2 at 32.]

The ALJ's persuasiveness evaluation of Nurse Tennancour's statements was appropriate. The ALJ properly discussed Kevin S.'s medical history, including bipolar disorder, depression, anxiety, having not been in outpatient mental health treatment since 2011, an extensive work history without evidence of termination, a hospitalization in July 2021 for psychosis related to abusing cough medicine, and various treatments and examinations. [Filing No. 10-2 at 30-32.] Further, the ALJ considered Kevin S. being off medication for a time, including during the period of Nurse Tennancour's March 2022 evaluation, but that he restarted these medications and added other medication. [Filing No. 10-2 at 30-32.] The ALJ found his treatment notes showed

improvement once restarting medication and further connected his function reports of being able to handle stress to his inconsistency finding. [Filing No. 10-2 at 32.]

As for Kevin S.'s ability to meet daily goals, the ALJ reasonably determined he could not work at a production rate pace or meet strict quota requirements after acknowledging Dr. Kurzhals' opinion that Kevin S. was difficult to interview, easily confused, slow to process information, and had trouble focusing, and Nurse Tennancour's opinions on inability to engage in stressful situations. [Filing No. 16 at 11.] To contrast these findings, the ALJ also noted Dr. Bose's observation that Kevin S. had average intelligence, intact attention, logical thought process, and Nurse Tennancour April 2022 note that he had normal attention and concentration. [Filing No. 16 at 11.] The Court finds the ALJ provided a logical bridge here. The ALJ's RFC limitations of precluding a production rate pace or meeting strict quota production requirements, but still meeting end-of-day goals appropriately balances the observations of the ALJ and the record evidence. Therefore, the Court does not find remand appropriate on this issue.

### C. One-Time Examinations

Lastly, Kevin S. takes issue with the fact the ALJ found the non-examining state agency consultative physicians' opinions were persuasive but discounted Dr. Kurzhals' and Nurse Tennancour's March 2022 opinion because of being formed after only one meeting. [Filing No. 10-2 at 32.]

The ALJ however, did not discount these opinions on the sole basis of a single meeting. The ALJ discounted Dr. Kurzhals' opinion as only somewhat persuasive for being based on a one-time examination *and* his inability to examine the entire medical history. [Filing No. 10-2 at 32.] The ALJ similarly discounted both a primary care provider's form opinion and Nurse Tennancour's March 2022 opinion as unpersuasive for being given after only one visit, but also due to other

treatment notes at the time showing no support for the limitations they opined. [Filing No. 10-2 at 32.] The ALJ also noted that Dr. Kuzhals' opinion and Nurse Tennancour's March 2022 opinion were provided when Kevin S. was not taking his medication as prescribed, and that mental status exams were fairly normal when he was taking his medication. [Filing No. 10-2 at 32.] As such, the ALJ did not rely solely on the basis that these examinations were based on only one meeting, and the Court does not find error.

### IV. CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Kevin S. benefits. Final judgment will issue by separate entry.

Date: 3/28/2024

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**